Thomas BEAULIEU

v.

James HARTIGAN.

Civ. A. No. 77–639–T.

United States District Court,
D. Massachusetts.

March 14, 1977.

Alan R. Hoffman, Kaplan, Latti & Flannery, Boston, Mass., for plaintiff.

William Brown, Asst. U.S. Atty., Boston, Mass., for defendant.

MEMORANDUM

TAURO, District Judge.

By order dated March 9, 1977, the Court of Appeals reversed without prejudice my granting of bail on March 4, and invited me to reconsider the issue of bail in light of the further hearings in this case. Upon further reflection and consideration, I again grant-

ed bail to petitioner by order dated March 9, 1977.[1]

■ Certainly, the ordinary presumption in favor of granting of bail is modified when a person faces a warrant of extradition. *Wright v. Henkel*, 190 U.S. 40, 62–63, 23 S.Ct. 781, 47 L.Ed. 948 (1903); *compare* 18 U.S.C. § 3146, 18 U.S.C. § 3184. It is equally certain that it is within the power of the district court to grant bail to a person facing extradition proceedings. *Wright v. Henkel, supra; In re Mitchell,* 171 F. 289 (S.D.N.Y.1909). When first faced directly with this question in 1903, the Supreme Court in *Wright* stated that the lower courts could grant bail in the face of "special circumstances." *Id.* In that case, the Court found that the petitioner's presentation of an affidavit that he was suffering from "bronchitis" and "chills" did not constitute sufficiently unusual circumstances to justify reversing *the lower court's denial of bail.*

In the first reported opinion addressing bail in an extradition proceeding after *Wright v. Henkel,* Judge Learned Hand, then a district judge, *granted bail* to the petitioner, despite his admonition that it should be granted "only in the most pressing circumstances and when the requirements of justice are absolutely preemptory." *In re Mitchell,* 171 F. 289, 290 (S.D.N.Y.1909). The petitioner in *Mitchell* was arrested on a warrant from Canada for larceny the day before a civil trial was to commence in which he was a plaintiff. Judge Hand found that a denial of bail would prejudice petitioner's ability to consult with counsel in the civil suit. He released him on bail pending completion of the lawsuit.

In the two decades following *Mitchell,* three courts faced the question of bail in extradition proceedings. Two involved petitions by foreign nationals in which bail was denied by the district court. *In re Klein,* 46 F.2d 85 (S.D.N.Y.1930); *U.S. ex rel. McNamara v. Henkel,* 46 F.2d 84 (S.D.N.Y.1912). In the third, bail was granted. *In re Gannon,* 27 F.2d 362 (E.D.Pa.1928). There, the court found bail appropriate stating,

[s]hould the prisoner default, he will not only forfeit the penal sum of his bond, but will inflict upon himself a punishment many times heavier than any which would follow conviction for the offense with which he is charged, for he must thereafter elude the vigilance of the officers of each and both of two governments whose resources are practically unlimited. Against the small risk of default there is the injustice of imposing imprisonment in advance of a hearing which must be delayed for some time.

*Id.* at 364.

In the more contemporary reported cases, granting of bail pending completion of the extradition proceedings has been the rule rather than the exception.[2]

---

1. On March 9, 1977, I granted plaintiff's request for bail following my denial of his motion for a temporary restraining order. At the same time I granted defendant's request for a stay of the bail order pending appeal. (Appendices A and B).

2. *Shapiro v. Ferrandina,* 355 F.Supp. 563 (S.D.N.Y.1973), *modified and aff'd,* 478 F.2d 894 (2d Cir. 1973), *cert. dis.,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973); (Petitioner, on bail in another proceeding, was put on additional bail pending probable cause hearing. After hearing, order that petitioner be placed in custody stayed pending filing of habeas corpus petition; following denial of petition, stay continued pending appeal.); *Application of D'Amico,* 185 F.Supp. 925 (S.D.N.Y.1960), *appeal dismissed,*

*sub nom. United States v. Bishopp,* 286 F.2d 320 (2d Cir. 1961), *cert. den. sub nom. Farace v. D'Amico,* 366 U.S. 963, 81 S.Ct. 1924, 6 L.Ed.2d 1254 (1961) (Bail continued pending further proceedings in case of American citizen wanted by the Italian government for aggravated robbery and kidnapping); *Artukovic v. Boyle,* 107 F.Supp. 11 (S.D.Cal.1952), *rev'd on other grounds, sub. nom. Ivancevic v. Artukovic,* 211 F.2d 565 (9th Cir. 1954), *cert. den.* 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 645, *reh. den.* 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 698 (1954). (Petitioner sought on murder charges. Grant of bail left undisturbed by circuit court despite its reversal of district court determination that the treaty under which petitioner was seized was no longer in effect.)

In the one exception, a court refused to grant bail to a recently deposed President of Venezuela who was sought by his homeland on charges of murder and financial wrongdoing. *Jimenez v. Aristequieta,* 311 F.2d 547 (5th Cir. 1962); *cert. den.* 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1962), *reh. den.* 374 U.S. 858, 83 S.Ct. 1867, 10 L.Ed.2d 1083 (1962), *aff'g further order of, district court,* 314 F.2d 649 (5th Cir. 1963). In upholding the district court's *refusal to grant bail,* the court noted that it was taking into account all relevant facts and circumstances, as well as *the lower court's finding that it could not ensure petitioner's presence by the setting of bail.* 314 F.2d at 652–3. Surely, the granting of bail to a political refugee and ex-president sought by his own country raises more delicate questions of international comity than are present in the more typical extradition case, such as the one at bar. A further distinguishing feature is, of course, the fact that in *Aristequieta,* the district court exercised its discretion against granting bail.

■ In none of the cases dealing with the issue of bail in an extradition setting was a district judge who granted bail subsequently reversed by a reviewing court. Analysis of these cases leads me to the conclusion that the "special circumstances" doctrine of *Wright,* though still viable, must be viewed, in the light of modern concepts of fundamental fairness, as providing a district judge with flexibility and discretion in considering whether bail should be granted in these extradition cases. The standard of scrutiny and concern exercised by a district judge in an extradition case should be greater than in the typical bail situation, given the delicate nature of international relations. But one of the basic questions facing a district judge in either situation is whether, under all the circumstances, the petitioner is likely to return to court when directed to do so. Fundamentally, it is a judgment call by the district court based on the totality of the circumstances, including the extremely important consideration of this country's treaty agreements with other nations. A district judge should approach the bail situation in an extradition case with an added degree of caution, given the additional factor of an international treaty.

■ After examining the totality of the circumstances, set forth in my memorandum of March 8, 1977, (Appendix C), I am persuaded that the petitioner is a good bail risk.

## APPENDIX A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
* * * * * * * * * * * * * * * * * * * *   *
                                          *
THOMAS P. BEAULIEU,                       *
                                          *
                          Petitioner,     *
                                          *
                   vs.                    * CIVIL ACTION
                                          * NO. 77-639-T
JAMES I. HARTIGAN, Assistant U.S.         *
Marshal, ET AL,                           *
                                          *
                          Respondents.    *
                                          *
* * * * * * * * * * * * * * * * * * * *   *
```

PETITIONER'S RENEWED MOTION FOR BAIL

Now comes the Petitioner in the above-entitled

action and moves this Honorable Court to set bail in

a reasonable amount pending an Appeal from this Court's decision with respect to Petitioner's Motion for a Temporary Restraining Order.

Respectfully submitted,

*Alan R. Hoffman*
Alan R. Hoffman

KAPLAN, LATTI AND FLANNERY
95 Commercial Wharf
Boston, Massachusetts  02110
(617) 523-1000

DATED:  March 9, 1977
        Boston, Massachusetts

## APPENDIX B

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS P. BEAULIEU, Petitioner, | ) ) ) |
| v. | ) )    CIVIL ACTION )    NO. 77-639-T |
| JAMES I. HARTIGAN, Assistant U.S. Marshal, et al, Respondents. | ) ) ) ) |

### MOTION FOR STAY PENDING APPEAL

Now come respondents and move for a stay pending appeal of the Court's Order of March 9, 1977 granting bail to petitioner.

JAMES N. GABRIEL
United States Attorney

By *William A. Brown*
WILLIAM A. BROWN
Assistant U. S. Attorney
Chief, Civil Division

### CERTIFICATE OF SERVICE

Suffolk, ss.

Boston, Massachusetts
March 9, 1977

I, William A. Brown, Assistant U. S. Attorney, hereby certify that I have this date served a copy of the foregoing Motion For Stay Pending Appeal upon petitioner by mailing a

copy of same in a franked, official envelope to Alan R. Hoffman, Esquire, Kaplan, Latti and Flannery, 95 Commercial Wharf, Boston, MA 02110, attorney of record for petitioner.

WILLIAM A. BROWN
Assistant U. S. Attorney
Chief, Civil Division

APPENDIX C

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

THOMAS P. BEAULIEU *
*
*
v.      *      CA 77–639–T
*
*
JAMES I. HARTIGAN    *

MEMORANDUM

TAURO, D.J.            March 8, 1977

This memorandum is in response to the Court of Appeals order dated March 3, 1977.

I did not "release appellant on personal recognizance pending resolution of the extradition proceedings" (March 7, 1977 Order of Court of Appeals). I released him on Friday evening, March 3 at 5:00 p. m. until Wednesday, March 9 at 3:00 p. m., at which time I was to have received further findings of fact from the Magistrate with respect to the identification of the petitioner Beaulieu.

All that was before me on Friday afternoon, and all that will be before me on Wednesday, was petitioner's application for a temporary restraining order. If the Magistrate's findings of fact indicate that he was properly identified, then the issue of further bail will not arise.

The primary issue before the Magistrate was identification. Representations made to me by petitioner's counsel as to the Magistrate's comments from the bench, combined with the conclusory nature of his reported findings, caused me to request additional findings. Of principal concern to me was whether the Canadian police officer had actually listened to only one intercepted telephone conversation. The officer's testimony was in conflict with his affidavit on that point, and I wanted to know the Magistrate's subsidiary finding on that issue. If the Magistrate finds that the police officer listened only to the first telephone conversation then there would be no basis for an ultimate finding of identification.

With the above as background, I was prompted to release petitioner Beaulieu for the four intervening days because: 1) he has already been incarcerated for approximately two months; 2) he has no passport; 3) he has no funds; 4) his parents were in the courtroom and struck me as being very responsible people; 5) his father represented to me that he would ensure his son's presence on

Wednesday; 6) upon my own inquiry of Beaulieu, I was satisfied that he would be present on Wednesday; and 7) I was satisfied that he was no danger to himself or the community.

I thought then and I do now that it was grossly unfair to confine petitioner Beaulieu for the better part of two months before giving him a hearing on the fundamental issue of identification, having in mind that were this case to be prosecuted in the United States, the District Court would be required to give him a trial within 90 days of his arraignment, he being in confinement.

These factors were all discussed by me on the record as I made my decision to admit him to bail. I had no time to write a memorandum opinion, but did grant a stay so the United States Attorney could, within minutes after my hearing, seek review in the Court of Appeals. In order to assist the Court of Appeals, I did instruct the court reporter to make himself available so that the Court of Appeals could have my comments recited, and thereby know the basis for my decision regarding bail.

I regarded the totality of the circumstances to be sufficiently "special" (March 7, 1977 Order of Court of Appeals) so as not to violate any "principles of international comity" (March 4, 1977 Order of Court of Appeals). Indeed, I felt my decision was consistent with the due process rights of an American citizen, presumed to be innocent, and yet to be definitively identified, because of my request for subsidiary findings from the Magistrate. Thus, I feel my granting of bail was a proper exercise of my discretion, within the restrictions set forth in *Wright v. Henkel*, 190 U.S. 40, 63, 23 S.Ct. 781, 47 L.Ed. 948 (1903); *Jimenez v. Aristequieta*, 314 F.2d 649, 653 (5th Cir. 1963).